ALVINA LEWIZA FLOYD, *Appellant,* v. AUGUSTUS V. S. SMITH, PEARL THORN, FLOYD ROWAN AND THOMAS G. ROWAN, HER HUSBAND, *Appellees.*

A testatrix devised and bequeathed all her estate of every kind to her grandson B., to have and to hold to him and to his heirs and assigns to his and their own proper use, benefit and behoof forever, and stated therein that it was her intention to make no provision for her daughter C., or her granddaughter D., as in her judgment they will be more amply provided for by her grandson B. than they could be by her in her will:

HELD; that no trust in favor of C. was created by the will which a court of equity could enforce.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Stripling & Noble,* for Appellant;

*Geo. M. Robbins* and *Stewart & Bly,* for Appellees.

HOCKER, J.—The appellant filed a bill in the circuit court of Duval County on August 12th, 1907, against Augustus V. S. Smith, to which a demurrer for want of equity was opposed, and the demurrer sustained. Subsequently two amended bills were filed by leave of court, in the last of which Pearl Thorn Floyd Rowan and her husband Thomas G. Rowan were made parties defendant. A demurrer to the first of these amended bills was filed for want of equity, which was sustained. To the other amended bill was filed a demurrer for want of equity on October 5th, 1908, and on December 9th, 1908, a decree was entered dismissing the bill for failure to set down the demurrer for argument. An appeal was taken from this order.

The matter before us involves the construction of the will of Augusta Levi, mother of appellant Alvina Lewiza Floyd, and grandmother of appellees A. V. S. Smith and Pearl Thorn Floyd Rowan. The items of the will which are to be construed are as follows:

"2nd. I give, devise and bequeath to my grandson Augustus V. S. Smith, all the rest and residue of my estate, real, personal and mixed of every name and nature whatever and wherever situated and which I may hereafter and from time to time in any way acquire or to which I may be rightfully entitled, to have and to hold to him and to his heirs and assigns to his and their own proper use, benefit and behoof forever.

3rd. It is my intention to make no provision in this my last will and testament for my daughter Alvina Lewiza

Floyd, widow of G. Wash Floyd, or my granddaughter
Pearl Thorn Floyd, daughter of said Alvina Lewiza Floyd,
as in my judgment they will be more amply provided for
by my said grandson Augustus V. S. Smith, the son of my
said daughter Alvina Lewiza Floyd, by her first husband,
than they could be by me in this my last will and testa-
ment."

The will was probated in Volusia county, Florida, on
the 22nd of May, 1902, and Augustus V. S. Smith was
named and qualified as executor. The bill alleges in sub-
stance that the property involved is of the value of about
$30,000; that the oratrix has no estate or income, and for
many years prior to her mother's death she was depend-
ent upon the latter to a large extent for maintenance and
support; that oratrix is a widow, with no one upon whom
she has any legal right to call for support except her son,
the appellee A. V. S. Smith, and that since her mother's
death she has been in very straightened circumstances,
and although she has made repeated demands upon her
said son for aid and assistance he has persistently refused
to make any provision for her, either out of the ample
estate of her late mother, or out of his own funds, and
has left oratrix to earn a living by sewing, or such other
employment as she has been able to obtain.

The bill alleges that by the 3rd paragraph of her moth-
er's will the defendant A. V. S. Smith is constituted a
trustee of the whole estate of her deceased mother for the
benefit of oratrix and her daughter Pearl, a moiety to
each, and that she is entitled to an accounting, etc. to
have him removed as such trustee, and a moiety of the
property conveyed and turned over to her or a new trustee
should be appointed by the court. The bill prays for the
appointment of a master to take an account, that A. V. S.
Smith be compelled to convey to oratrix one-half of the
real and personal estate; that he be compelled to execute

the terms and directions of said last will and testament of Augusta Levi, and to make suitable provision from said estate of Augusta Levi in such amount and in such manner as to the court shall seem meet and proper in the premises, and for general relief. We do not think it essential to set forth other allegations of the bill.

It is evident the Circuit Judge considered that by the terms of the will the appellant was given no interest in the estate of her mother which a court of equity could enforce. It is admitted that by the 2nd paragraph of the will all the estate, real, personal and mixed of the testator is devised and bequeathed to Augustus V. S. Smith and his heirs'and assigns in fee simple, but it is contended that the 3rd paragraph fixes upon the said estate a trust in favor of appellant.

It is said in Lines v. Darden, 5 Fla., 51, that "in the construction of a will, the intention of a testator, as therein expressed, shall prevail over all other considerations, if consistent with the principles of law. To this first and great rule in the exposition of wills, all others must bend. Courts allow of no rule of construction of mere words to control the intention, but the whole instrument is to be considered, and if possible, effect given to every part of it. The relative situation of the parties, the ties and affection subsisting between them, besides the motives which would naturally influence the mind of the testator, are proper to be considered in expounding the import of doubtful words." It is further held that "to constitute a trust, three circumstances must concur: sufficient words to raise it—a definite subject—and a certain and ascertained object. No commendatory terms of a will expressing a 'wish,' 'will,' or 'desire' are sufficient, unless there be certainty as to the parties *who* are to take and *what* they are to take. Whenever the subject to be administered as trust property, and the object for whose benefit it is to be ad-

ministered, are to be found in a will, not expressly creating a trust, the indefinite nature and *quantum* of the subject as well as the indefinite character of the objects, are always used by courts as evidence that the mind of the testator was not to create a trust. The words 'will' and 'devise' are not necessarily mandatory. They would be sufficient to raise a trust, if not coupled with words inconsistent with such construction." In the opinion the history of the doctrine pertaining to recommendatory or precatory trusts is examined, and it is said: "The current of decisions of late years has been against converting the legatee into a trustee, and the English courts have manifested a strong disposition to retrace their steps and restrict the doctrine of recommendatory trusts by giving to the words of a will their ordinary sense, unless it is clear they were designed to be used as peremptory, in which case, though precatory in form, they become imperative in fact. There can be no doubt but that words of recommendation will create a trust provided all the requisites are to be found in the will concurring for that purpose. They are held in many cases to import an imperative devise, and will so operate, if there is nothing in the will inconsistent with such a construction. The true question in every case is whether the intention of the testator is manifest and mandatory in favor of the object of the bounty, or as merely suggestive and advisatory to the first taker. If the testator in this case designed to determine the specific amount which his daughter should loan to her children why should he not have said so in his will? Why leave a matter of such importance to speculation and inference and that too of the most doubtful character?"

In this case a testator by one clause of his will gave and bequeathed to his beloved and only daughter all his estate during her natural life, and at her death directs the prop-

erty to be equally divided between the children of the tenant for life; and by another clause expresses his 'will' and 'desire' to be that should either of his grandsons arrive at the age of 21, or any of his granddaughters marry previous to the time of final distribution, then that such grandson, or such granddaughter shall receive a portion of the estate as a loan to have the management and receive the benefit of the same, until the final distribution shall take place, when the property thus loaned shall return to the estate to be equally divided. It is held that the will did not create a trust for the benefit of the grandchildren, but merely vested a power in the daughter (the tenant for life) to be exercised at her discretion.

In Colton v. Colton, 127 U. S., 300, 8 Sup. Ct. Rep. 1164, the words of a will were "I give and bequeath to my said wife E. M. C. all of the estate, real and personal, of which I shall die seized, possessed or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best." These words were construed as giving the mother and sister of the testator a beneficial interest in the estate given to the wife to the extent of a permanent provision for them during their respective lives, suitable and sufficient for their care and protection, having regard to their condition and necessities, and the amount and value of the fund from which it must come. It is held it was the duty of the court to ascertain, determine and declare what provision would be suitable and best under the circumstances and all particulars and details for securing and paying it. It is also held that "when property is given by will absolutely and without restriction a trust is not to be lightly imposed upon mere words of recommendation and confidence; but if the objects of the supposed trust are definite and the property clearly pointed out, if the relations between the testator

and supposed beneficiary are such as to indicate a motive on the part of the one to provide for the other, and if the precatory clause expressing a wish, entreaty or recommendation that the donee shall apply the property to the benefit of the supposed *cestui que trust* warrants the inference that it is peremptory, then it may be held that an obligatory trust is created, which may be enforced in a court of equity." It is further held that "no technical language is necessary for the creation of a trust in a will, and no general rule can be formulated for determining whether a devise or bequest carries with it the whole beneficial interest, or whether it is to be construed as creating a trust." These cases seem to set forth the modern doctrine with reference to those trusts to which it applies. The cases on this subject are very numerous and numbers of them have been examined, but we do not think it is necessary to encumber this opinion with a specific examination of them. The real question is, What was the intention of the testator—did he (or she) intend that the words expressing the wish, desire, recommendation or confidence or the like should govern the conduct of the party to whom they may be addressed or whether they are an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it however to the party to exercise his own discretion. It does not seem to have been found possible to formulate any definite statement of principles which will apply to every case. See 22 Am. & Eng. Ency. Law (2nd ed.) 1163 *et seq.;* Post v. Moore, 181 N. Y. 15, 73 N. E. Rep. 482, 2 Am. & Eng. Anno. Cas. 591 and note; 3 Pomeroy's Eq. Jur. (3rd ed.) chapters 1014 *et seq.;* Gardner on Wills, pp. 536-7-8. Also see Robinson v. Randolph, 21 Fla. 629, text 644, S. C. 58 Amer. Rep. 692.

Applying these general principles to the 3rd paragraph of the will of Mrs. Augusta Levi, can we say that she in-

tended thereby to create a trust in the estate which she had given in the previous paragraph to her grandson, in favor of her daughter?    In the first line we are confronted with her *expressed intention*—an *expressed intention* to make no provision in her will for her daughter or granddaughter—as in her judgment they will be more amply provided for by her grandson than they could be in her will.   It is true that the allegations of the bill assert conditions which, if true, it seems to us should have appealed strongly to her motherly feelings to make some provision for her daughter, but she did not do it, and gives her reasons for not doing so.   She seems to have trusted entirely to the son to provide for his mother.   The will contains no precatory words—it expresses no wish, desire, recommendation, entreaty or the like, in regard to the use to be made of her estate.   The testator simply expresses her judgment that her daughter and granddaughter will be more amply provided for than they could be by her in her will.   It is not the function of the courts to make or reconstruct wills according to their notions of what testators should do.   Words should be given their usual meaning unless some other meaning is intended.

The will in the instant case was not contested so far as the record shows.   It was probated in 1902.   Five years after its probate we are asked to construe it, and though we are not insensible to the ethical and sentimental considerations presented by the record, we are constrained to hold that no such trust was created by the will in favor of the appellant as a court of equity can enforce.

The decree appealed from is affirmed.

All   concur,   except   TAYLOR, J.,   absent   on   account of illness.

Petition for rehearing in this case denied.