385 So.2d 1102 (1980)
In re the ESTATE OF Walter F. RITZ, Deceased.
Marie P. RITZ, Appellant,
v.
Robert W. RITZ and Edward J. Ritz, Appellees.
No. 79-88.
District Court of Appeal of Florida, Fifth District.
June 18, 1980.
Rehearing Denied July 15, 1980.
*1103 Rollo E. Karkeet, Hernando, for appellant.
J. Hardin Peterson, Jr., of Peterson, Myers, Craig, Crews, Brandon & Mann, P.A., Lakeland, for appellees.
COBB, Judge.
The decedent, Walter Ritz, died testate on December 18, 1978, survived by a widow, Marie Ritz, and two adult sons, Robert and Edward Ritz. The sons, who were residual beneficiaries under Article IV of the will, filed a petition seeking construction of the will, alleging that Article III thereof was ambiguous and confusing. Said article reads as follows:
I give and devise unto my beloved wife, MARIA P. RITZ, the exclusive right to occupy my residence adjacent to the Inverness Country Club for the term of her natural life. During the period of my wife's occupancy of such residence, she shall be entitled to the exclusive use of all furniture and furnishings. Should my wife desire to sell such residence, or upon her death, the net proceeds from the sale of such residence shall be divided on the basis of Eighty Per Cent (80%) to my wife, MARIA P. RITZ; Ten Per Cent (10%) to my son, EDWARD J. RITZ; and Ten Per Cent (10%) to my son, ROBERT. W. RITZ. At the time of such sale my wife shall be entitled to such furniture and furnishings as she may select, and the balance of the sale proceeds of such furniture and furnishings shall be divided in the same manner as the net sales proceeds from my residence.
The probate court entered an order on August 1, 1979, striking Article III in its entirety from the will. The widow appeals this order.
The parties to this appeal are in agreement that the residence referred to in Article III was the homestead of Walter Ritz at the time of his death and that the widow takes all of the household furniture and furnishings therein by reason of Section 732.402, Florida Statutes. The personalty, therefore, does not enter into this dispute.
The issue in this case is whether the trial court erred in striking Article III from the will, which results in the homestead property descending by operation of law,[1] vesting only a life estate in Marie P. Ritz and an unencumbered remainder interest therein in Robert and Edward Ritz.
The widow contends that the action of the trial court contravenes Article X, Section 4(c) of the Florida Constitution, which allows the devise of a homestead to an owner's spouse in the absence of a minor child.[2] She asserts that Article III of the will clearly expresses the intent of Walter Ritz that she receive an 80% interest in the remainder. She argues that since he could leave her 100% of the remainder, he could leave her 80% of it. The lesser is included in the greater. The controlling objective is to determine from the entire written instrument the testamentary intent of the testator and effectuate it, if possible, consistent with law and public policy. Mosgrove v. Mach, 133 Fla. 459, 182 So. 786 (1938); Elmore v. Elmore, 99 So.2d 265 (Fla. 1957).
The appellees, on the other hand, disagree with the contention that the phraseology of Article III is clear and unequivocal. They maintain that, other than the attempted devise of a life estate to the widow (which was merely repetitive of the operation of the law), the remaining relevant portions of Article III are patently ambiguous. The reference to the percentages of money to be allocated to Maria, Edward and Robert in the event of sale, whether during Maria's life or after her death, was an attempt to assign monetary values to the life estate, specifically devised to the widow in the first sentence, and to the remainder interests of the sons. These percentage allocations of *1104 net sale proceeds, say the appellees, logically cannot be construed as the enlargement of a life estate to a fee or as a power of sale. In regard to this latter point, appellees also cite the Mosgrove case, supra.
In Mosgrove, the testator gave his nurse a life estate in certain property with a remainder over to his nieces and nephews. He specified that the nurse, Mary Selina Mosgrove
shall have the right to sell, mortgage, pledge or dispose of any of the real or personal property bequeathed to her under this item of this my will in any manner in which she shall see fit, and use the proceeds thereof in any manner she shall see fit, it being my intention to bequeath her this her half interest of said residue of my estate without restrictions, save and except that if she should possess any of the same at the time of her death, it is my will that it be equally divided among my said nieces and nephews. (emphasis in original.)
Mosgrove v. Mach, supra 182 So. at 792.
The Florida Supreme Court held that this provision gave the nurse only a power to dispose of her life interest, with no power to dispose of the fee. The court observed that the testator expressly could have enlarged the life estate granted, but that such enlargement could not be inferred in the face of the express preceding limitation of a life estate in the realty. Therefore, the reference to the right to sell was construed as limited to the life estate, and the court found no intent in the will that the tenant should be allowed to destroy or impair the vested remainder interests.
In the earlier case of Brown v. Harris, 90 Fla. 540, 106 So. 412 (1925), the Florida Supreme Court reached a similar conclusion. The testatrix had left property to her husband "to be used as he sees fit during his life, at his decease all that remains to be left to" certain individuals. The Supreme Court, reversing the trial court, held that such a provision did not confer upon the life tenant the power to convey the fee-simple title to the real estate. The will gave the husband a life estate and no more.
In the instant case, the first sentence in the disputed article clearly attempts to grant to the widow a life estate in the homestead. The will then says that if she should desire to sell the residence, she should receive eighty percent of the proceeds. This distinguishes the instant case from Mosgrove because it is clear that the testator is referring to sale of the fee, not sale merely of the life estate, and the intent is that the remaindermen derive a specific benefit from such sale: 20% of the net proceeds. Brown is also distinguishable insofar as there is no reference therein to a sale by the life tenant, only to his use of the property.
We cannot agree with the appellant, however, that Article III can and should be construed as giving the widow a devise of 80% of the remainder interest. This proposed construction is based upon the reference to a sale upon the death of the widow in the third sentence. But if the testamentary intent had been to devise an 80% fee remainder interest to the widow, in addition to her life estate, what meaning must be ascribed to the repeated references to a sale and the allocation of the proceeds therefrom?
We believe that the testamentary intent is clear that, during the lifetime of Marie P. Ritz, she should have the right to live in the residence and she is granted an unrestricted and exclusive power to sell the fee title to the residence, provided that 20% of the proceeds from such sale go to the two remaindermen. See Roberts v. Mosely, 100 Fla. 267, 129 So. 835 (1930); Green v. Barrow, 150 Fla. 594, 8 So.2d 283 (1942); Sanderson v. Sanderson, 70 So.2d 364 (Fla. 1954).
The problem arises from the inclusion of the clause "or upon her death" in the third sentence of Article III. Upon Marie's death, must the residence be sold and 80% of the money distributed to her estate? This is the argument of the appellant. But the will says nothing about a mandatory sale and nothing about the estate of Marie P. Ritz. If this enlargement of the life estate to a fee interest inuring to *1105 the benefit of Marie's estate had been intended by Edward J. Ritz, it could have been accomplished by a definite provision. See Mosgrove, supra 182 So. at 791. In construing the will, the testator's intent should be discerned from a consideration of the whole instrument. Brickell v. DiPietro, 145 Fla. 23, 198 So. 806 (1940). The will of Walter F. Ritz, taken as a whole, shows his clear intent that his widow, during her lifetime, be provided the residence and furnishings, or 80% of the sale price therefrom, and that, otherwise, his estate should pass to his two sons. Nothing in the will evinces a concern for testamentary or intestate heirs of Marie Ritz. To construe the isolated phrase "or upon her death" as an intention of Walter Ritz to divest his sons of 80% of their remainder interest in the homestead residence after the death of Marie is unwarranted.
On the other hand, we reject the argument of the appellees that the testator was precluded by Article X, Section 4(c) of the Florida Constitution from devising any interest in his homestead to his spouse less than the entire fee. Cf. In Re: The Estate of John W. Finch, 383 So.2d 755 (Fla. 4th DCA 1980). If he could devise to her the entire remainder interest, in addition to her life estate, then there is no reason he cannot bequeath to her the power to sell it and keep 80% of the proceeds from the sale. If the remaindermen can be divested of all of their interest in the homestead by testamentary devise, how can they object to a testamentary disposition that, at the least, assures them of 20% of the proceeds from any sale during the life tenancy and, in the absence of such sale, the entire fee?
Insofar as the trial court found the clause "or upon her death" in the third sentence of Article III patently ambiguous and incomprehensible, we agree with him and sustain his striking of that clause. This was properly done by the process of construction of the language within the four corners of the will without the aid of extrinsic evidence. See 80 Am.Jur.2d Wills § 1288 (1975); Robinson v. Randolph, 21 Fla. 629 (1885). We disagree with the action of the trial court in striking the remaining provisions of Article III, although noting that only the third sentence has any dispositive effect, and reverse the order of August 1, 1979, to that extent.
We, therefore, hold that Article III of the will, in the absence of the stricken clause, gives to Marie P. Ritz, the life tenant of the residence, a power to sell the residence during her lifetime provided she gives ten percent of the net proceeds of such sale to Edward J. Ritz and ten percent to Robert W. Ritz. Upon her death, without exercise of this power, the remainder interests of Edward and Robert will give them unencumbered fee title to the residence property.
AFFIRMED in part; REVERSED in part.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] See § 732.401, Fla. Stat.
[2] Article X, Section 4(c) of the 1968 Florida Constitution provides that the homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. See also, In Re Estate of James McCartney, 299 So.2d 5 (Fla. 1974).